UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Select Comfort Corporation,                            Civil No. 13-2451 (DWF/SER)

          Plaintiff,

v.                                                     **MEMORANDUM
                                                       OPINION AND ORDER**

Tempur Sealy International, Inc., d/b/a/
Tempur-Pedic; and Mattress Firm Holding
Corp., d/b/a Mattress Firm,

          Defendants.

_____

Andrew S. Hansen, Esq., Dennis E. Hansen, Esq., Samuel R. Hellfeld, Esq., and
Elizabeth A. Patton, Esq., Oppenheimer Wolff & Donnelly LLP, counsel for Plaintiff.

Arthur S. Beeman, Esq., Arent Fox LLP; and John W. Ursu, Esq., Robert J. Gilbertson,
Esq., and X. Kevin Zhao, Esq., Greene Espel PLLP, counsel for Defendant Tempur Sealy
International, Inc., d/b/a Tempur-Pedic.

Brian D. Roche, Esq., Jennifer De Priest, Esq., and Vanessa Marti Heftman, Esq., Reed
Smith LP; and David T. Schultz, Esq., and Nadege J. Souvenir, Esq., Maslon Edelman
Borman & Brand, LLP, counsel for Defendant Mattress Firm Holding Corp. d/b/a
Mattress Firm.

_____

**INTRODUCTION**

      This matter is before the Court on a Motion for a Temporary Restraining Order brought by Plaintiff Select Comfort Corporation ("Select Comfort") against Defendant Mattress Firm Holding Corp., d/b/a Mattress Firm ("Mattress Firm"). (Doc. No. 39.) The motion is not against Defendant Tempur Sealy International, Inc., d/b/a/ Tempur-Pedic at this time. For the reasons set forth below, and presented by the Court at

the hearing on the Motion for a Temporary Restraining Order, the Court grants in part and denies in part Select Comfort's Motion.

## BACKGROUND

Plaintiff, Select Comfort, designs, manufactures, and markets mattresses and bedding products. (Doc. No. 41, Pl. Br. at 2.) Select Comfort sells a number of products under the Sleep Number® brand, which is trademarked under uncontested registrations. (Doc. No. 43, Somers Aff. ¶ 2.) Select Comfort also owns the registered trademark Select Comfort®. (*Id*.) Select Comfort sells its products nationwide at Select Comfort retail stores, through direct marketing operations, and through the Select Comfort website at selectcomfort.com and sleepnumber.com. (Somers Aff. ¶ 5.) According to Select Comfort, it has developed unique and innovative products, with a certain quality and reputation. (Somers Aff. ¶ 3-4.) Select Comfort also alleges that it undertakes extensive advertising to develop its reputation and goodwill for its products. (*Id*.)

Defendant, Mattress Firm, is a retail seller of mattresses in the United States. Mattress Firm sells a number of different brands such as Tempur-Pedic, Sealy, and Serta. (Doc. No. 42, Hansen Aff. ¶ 2; Doc. No. 53, Murphy Decl. ¶ 3.) Mattress Firm is one of the largest retailers of Tempur-Pedic in North America. (*Id*.) Mattress Firm operates 1172 stores and its franchisees operate 172 stores; these operations are across 30 states. (Murphy Decl. ¶ 2.) Mattress Firm employs approximate 3,700 people, this includes 298 area managers, a number of lower level managers, and approximately 2,700 sales associates. (Murphy Decl. ¶ 6.) Mattress Firm does not currently sell Select Comfort Products. (Somers Aff. ¶ 6.) Mattress Firm did sell Select Comfort Products,

specifically Sleep Number beds, in its retail stores between 2005 and October 2009. (Murphy Decl. ¶ 4.) During this time, Mattress Firm advertised and sold Select Comfort beds online. (*Id.*) Select Comfort and Mattress Firm had executed a Retail Partner Agreement ("Agreement") for this time period. (Somers Aff. ¶ 6-8.) The Agreement ended in October 2009. (*Id.*) Select Comfort terminated the Agreement as part of a its strategy to focus its business on Select Comfort-owned stores. (Somers Aff. ¶ 6.)

With respect to its temporary restraining order, Select Comfort alleges that Mattress Firm is engaging in false and deceptive conduct that is damaging Select Comfort because of at least the following: Mattress Firm routinely disseminates false advertising regarding the Sleep Number® bed; Mattress Firm's salespeople make false comments to consumers about Select Comfort and the Sleep Number beds; Mattress Firm tells customers it ended its retail agreement with Select Comfort; and Mattress Firm improperly uses Select Comforts trademarks to deceive consumers. Select Comfort asserts that these ongoing activities are currently harming its sales, reputation, and goodwill and that it is entitled to a temporary restraining order as a result.[1]

---

[1] In its First Amended Complaint, Select Comfort asserts the following claims: (1) unfair competition in violation of 15 U.S.C. § 1125(a); (2) false advertising in violation of 15 U.S.C. § 1125(a); (3) deceptive trade practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, *et seq.*; (4) unlawful trade practices in violation of the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09, *et seq.*; (5) false statements in advertising in violation of the Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67; (6) consumer fraud in violation of the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69; (7) unjust enrichment; (8) unfair competition constituting product disparagement; (9) deceptive trade practices by product disparagement in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(8); (10) business

(Footnote Continued on Next Page)

Specifically, and as relevant to this motion, Select Comfort alleges that Mattress Firm's sales associates "routinely" make false and disparaging statements, including the following: that Sleep Number beds are of poor quality and customers are regularly dissatisfied; that Mattress Firm stopped carrying Sleep Number beds because of warranty issues and consumer dissatisfaction; that Sleep Number beds develop mold; that Select Comfort only offers a 20-year warranty (when in fact it is a 25-year warranty); and that Sleep Number beds are made of "cheap foam" and "commodity foam." (Pl. Br. at 4-14.) Select Comfort alleges that each of these statements is provably false. (*Id*.) Select Comfort includes advertising flyers allegedly disseminated by Mattress Firm which include allegedly false statements about Select comfort and Sleep Number beds. (*Id*. at 9, 11.) Select Comfort also alleges that Mattress Firm improperly uses Select Comfort trademarks in paid Google advertisements, by the manipulation of organic searches in Google, and in paid advertising in conjunction with third-party shopping sites. (*Id*. at 14-26.) In its brief in support of its motion for a temporary restraining order, Select Comfort includes pictures of advertisements from the internet in support of these claims. (*Id*. at 16-17, 19-21, 23-26.)

Mattress Firm disputes that it does any of the above and states that, if it did, it remedied those issues by acting promptly. Mattress Firm states that where issues have

---

(Footnote Continued From Previous Page)
defamation; (11) tortious interference with prospective economic advantage; and (12) trademark infringement in violation of 15 U.S.C. § 1114(1) (the "Lanham Act"). (Doc. No. 8, Am. Comp. ¶¶ 115-142.) However, because the parties only examine Select Comfort's claims for false advertising and trademark infringement under the Lanham Act in their briefing, the Court only addresses those claims at this time.

not been resolved, it is working on ensuring that they get resolved. Mattress Firm also asserts that, at the least, because there is no new conduct, Select Comfort is not entitled to temporary injunctive relief and should instead pursue the normal course of a lawsuit.

## DISCUSSION

### I. Temporary Restraining Order

The Court considers four primary factors in determining whether a temporary restraining order should be granted: (1) the likelihood of the moving party's success on the merits; (2) the threat of irreparable harm to the moving party; (3) the state of balance between the alleged irreparable harm and the harm that granting the injunction would inflict on the other party; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). This analysis was designed to determine whether the Court should intervene to preserve the status quo until it decides the merits of the case. *Id.* In each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *See West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). A preliminary injunction is an extraordinary remedy. See *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 503 (8th Cir.1987). The party requesting the injunctive relief bears the "complete burden" of proving all of the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

#### A. Likelihood of Success

This factor requires that the movant establish a substantial probability of success on the merits of its claim. *See Dataphase*, 640 F.2d at 114.

### i. False Advertising

To establish a claim for false advertising, a plaintiff must establish the following five elements:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998) (citations omitted); 15 U.S.C. § 1125(a)(1)(B) (prohibiting false statements in "commercial advertising or promotion"). The false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers. *Id.*

The main issue in dispute, for purposes of this motion, is whether Select Comfort will likely succeed in showing that the representations alleged by Select Comfort constitute "commercial advertising or promotion." Because "commercial advertising or promotion" is not defined in the statute, Courts have adopted a four-part test. Under the test, the representations must be: (1) commercial speech; (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) disseminated sufficiently to the relevant

6

purchasing public. *Auto-Chlor Sys. of Minn., Inc. v. JohnsonDiversey*, 328 F. Supp. 2d 980, 1018 (D. Minn. 2004). Mattress Firm maintains that the statements upon which Select Comfort relies for its false advertising claim were not directed to a sufficiently substantial portion of the mattress-buying audience and they were not "part of an organized campaign to penetrate the market." At this time, on the record before the Court, the Court disagrees with Mattress Firm. Select Comfort has identified flyers and representations across a number of states. While there may be millions of customers compared to the small number of examples provided in Select Comfort's complaint, at this phase, the geographic spread and consistency of the representations is adequate to create a reasonable inference that the statements are sufficiently widespread to constitute commercial advertising or promotion.[2]

Thus, the Court finds that Select Comfort has established a likelihood of success with respect to its false advertising claim.

### ii. Trademark Infringement

To establish a claim for trademark infringement, a plaintiff must show that: (1) it has valid, protectable trademarks, and (2) the unauthorized use of those trademarks creates a likelihood of confusion. *See George & Co. v. Xavier Enter., Inc.*, Civ. No. 09-29973, 2009 WL 4730331, at *4 (D. Minn. Dec. 12, 2009). A court considers six factors to determine whether there is a likelihood of confusion:

---

[2] The Court has examined those cases cited by Mattress Firm, and has found them to be factually and legally distinguishable from this case. For example, the statements at issue in *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002), related to only one store and were largely hearsay and non-disparaging.

> 1) the strength of the plaintiff's mark; 2) the similarity between the plaintiff's mark and the alleged infringing mark; 3) the degree to which the allegedly infringing product competes with the plaintiff's goods; 4) the alleged infringer's intent to confuse the public; 5) the degree of care reasonably expected of potential customers; and 6) evidence of actual confusion.

*Georgia–Pacific Consumer Prods. LP v. Myers Supply, Inc.,* 621 F.3d 771, 775 (8th Cir. 2010) (citations omitted).

Here, the parties do not appear to dispute the validity of the Select Comfort and Sleep Number trademarks and instead focus on whether Select Comfort has a likelihood of establishing that Mattress Firm's practices with respect to Select Comfort's trademarks create a likelihood of confusion that harms Select Comfort.

Select Comfort alleges that Mattress Firm infringes Select Comfort's trademarks through internet search engines and third-party websites. First, Select Comfort alleges that Mattress Firm uses Select Comfort's trademarks verbatim by informing consumers that they can purchase genuine Select Comfort products from Mattress Firm. The parties do not appear to dispute that if a consumer is on the Mattress Firm website itself, there are no advertisements for Select Comfort products and there are no Select Comfort trademarks. The parties also do not appear to dispute that if consumers search for only "Select Comfort" or "Sleep Number" or "Mattress Firm" there is no direct overlap. Thus, in these situations there can be no likelihood of confusion. Instead, to show likelihood of confusion, Select Comfort appears to rely on the scenario that a consumer searches for either: 1) "Select Comfort" and "Mattress Firm," or 2) "Sleep Number" and "Mattress Firm," or 3) "Does mattress Firm sell Select Comfort beds?" When these searches are

8

entered, the results include a link to the Mattress Firm website, with the title "Select Comfort – Mattress firm."  However, once a potential consumer clicks on the link, it takes them to Mattress Firm's website, where it is immediately clear that Mattress Firm does not sell Select Comfort products.  Select Comfort argues that consumers may then purchase those beds sold at Mattress Firm, and will abandon any possible search for or purchase of a Select Comfort bed, but this is not enough to show likelihood of confusion or irreparable harm at this stage in the proceeding and does not warrant the extraordinary measure of a temporary restraining order.  *Cf. George & Co*, 2009 WL 4730331, at 4-5 (where the defendant sold both their products and the plaintiff's product though their website, used plaintiff's product's name on their own products and appeared to be attempting to pass off their product as the plaintiff's product).

Second, Select Comfort alleges that Mattress Firm pays third-party websites and that those websites include links relating to Select Comfort products which ultimately lead consumers to Mattress Firm's website.  The Court finds that at this phase there is not enough information relating to how these websites work to find a likelihood of success on the merits.  The Court concludes that, at this stage, Select Comfort cannot demonstrate a likelihood of success on the merits for its trademark infringement claim based on either type of alleged internet activity.

In sum, the Court finds that Select Comfort has demonstrated a likelihood of success on the merits with respect to its false advertising claim, but has failed to do so with respect to its trademark infringement claims.

### B. Irreparable Harm

The movant must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). The irreparable harm must be "certain and imminent such that there is a clear and present need for equitable relief." *Anytime Fitness, Inc. v. Fam. Fitness of Royal, LLC*, Civ. No. 09-3503, 2010 WL 145259, at *2 (D. Minn. Jan. 8, 2012) (citing *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996)).

#### i. False Advertising

The Court agrees with Select Comfort that a loss of goodwill and reputation can constitute irreparable harm. *George & Co.*, 2009 WL 4730331, at *5; *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003); *MSP Corp. v. Westach Instruments, Inc.*, 500 F. Supp. 2d 1198, 1217 (D. Minn. 2007). The Court also agrees that misleading comparisons can diminish a product's value in the minds of a consumer. Plaintiff has sufficiently shown that in instances where inaccurate comparative flyers are being used and where sales associates are making representations regarding customer dissatisfaction, low quality and mold in Select Comfort's products, Select Comfort will suffer irreparable harm.

#### ii. Trademark Infringement

As with likelihood of success on the merits, Select Comfort also fails to establish irreparable harm with respect to its claims of trademark infringement. At this point, there is a very narrow universe of search scenarios whereby a consumer might be re-directed to

10

Mattress Firm's website, and once such a consumer is, he will know immediately that he cannot purchase Select Comfort products at Mattress Firm. Select Comfort has failed to show irreparable harm on its trademark infringement claim.

### C. Balance of Harms and Public Interest

The third *Dataphase* factor to be considered is whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant, and the final *Dataphase* factor is whether injunctive relief is in the public's interest. *See Dataphase*, 640 F.2d at 114. Addressing both factors, the Court finds that a narrow restraining order with respect to any false advertising and/or false comparisons being made by Mattress Firm will not harm Mattress Firm. First, a letter or e-mail to its stores does not require unreasonable efforts and second, if what Mattress Firm claims is true (that they do not engage in such conduct and have already asked their employees to stop any such conduct if it exists), then such an order will not harm them in any way. It is in the public's interest to enjoin any false advertising or comparisons.

However, to require Mattress Firm to control all websites with possible trademark issues at this time would not meet this test. Mattress Firm states to the Court that its employees are working to remove any residual coding which may result in the Google search result with the title "Select Comfort – Mattress firm" and a link to the Mattress Firm website. There are no uses of Select Comfort brands anywhere on Mattress Firm's actual website. And, requiring Mattress Firm to enjoin all efforts with third-party advertisers is premature at this phase.

At this early stage, and in light of the Court's findings above, the Court concludes that these factors also weigh for Select Comfort's false advertising claims, and against its trademark infringement claims.

## CONCLUSION

For all of the reasons discussed above, the Court concludes that the balance of equities favors a narrow order with respect to any false representations and advertising and does not favor requiring Mattress Firm to cease causing Select Comfort trademarks to appear on certain web search results.  The Court notes, with respect to the trademark infringement claims, the Court relies, in part, on Mattress Firm's unambiguous claims that it is continuing to work on any such issues and that the parties will be before this Court again on January 10, 2014.

## ORDER

Based upon the parties' submissions and arguments, and for the reasons set forth above, **IT IS HEREBY ORDERED** that Select Comfort's Motion for Temporary Restraining Order (Doc. No. [39]) is **GRANTED IN PART**, and **DENIED IN PART** as follows**:**.

1.     Select Comfort's Motion for Preliminary Injunction Mattress Firm is **GRANTED** with respect to claims for false advertising and Mattress Firm is immediately enjoined from making the following representations to consumers regarding Select Comfort and its products or services, including the Sleep Number® brand:

   a.     that Mattress Firm dropped Sleep Number from its product offering for any reason;

   b. that Sleep Number products develop mold or black mold or that Sleep Number has lawsuits pending against it because of its products developing mold;

   c. that Sleep Number offers a 20-year warranty or any warranty less or different than the actual 25-year limited warranty offered by Sleep Number; and

   d. that Sleep Number beds use "cheap foam" or "commodity foam."

 2. Mattress Firm is ordered to, within forty-eight (48) hours, notify and direct its sales staff of the following:

   a. to cease making the representations listed in paragraph one of this Order to consumers;

   b. that Sleep Number ended the Retail Partner relationship with Mattress Firm;

   c. that Sleep Number beds do not have a problem with mold and that Sleep Number has no pending lawsuits against it relating to mold;

   d. that Sleep Number offers a 25-year limited warranty; and

   e. that Sleep Number's memory foam beds use custom-made proprietary foam that is exclusive to Sleep Number.

 3. Mattress Firm is ordered to cease use of materials that contain any of the representations listed in paragraph one of this Order, including but not limited to the flyers attached as Exhibits C and D to the Amended Complaint (Doc. No. 8).

 4. Select Comfort's Motion for Preliminary Injunction Against Mattress Firm is **DENIED** with respect to claims for trademark infringement, including Select Comfort's requests regarding internet search engine advertisements using "Sleep Number," "Select Comfort," "Sleep Number Bed Discounts," or "Select Number Beds."

5.      Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Select Comfort shall post cash or a bond in the amount of $25,000 within seven (7) days.

Dated:  December 23, 2013          <u>s/Donovan W. Frank</u>
                                   DONOVAN W. FRANK
                                   United States District Judge