**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| Select Comfort Corporation,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>Tempur Sealy International, Inc., d/b/a<br>Tempur-Pedic,<br><br>and<br><br>Mattress Firm, Inc.,<br>d/b/a Mattress Firm,<br><br>　　　　　　Defendants. | Court File No. 13-cv-02451-DWF-SER<br><br><br><br>**REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S DAUBERT MOTION TO EXCLUDE REPORT AND OPINIONS OF EXPERT WITNESS DAVID STEWART** |

## INTRODUCTION

Defendants' opposition to Select Comfort's motion fails to show that David Stewart's improper legal opinions and speculative, unsupported opinions are admissible. Under applicable law, and despite Defendants' arguments to the contrary, such opinions are improper and should be excluded under the *Daubert* admissibility standards.

**I.　CERTAIN OF STEWART'S OPINIONS MUST BE EXCLUDED BECAUSE THEY FAIL TO SATISFY THE *DAUBERT* STANDARD.**

　**A.　Stewart's Legal Conclusions Should Be Excluded.**

Experts cannot opine as to legal opinions or otherwise provide legal analysis in their expert reports. (Dkt. 282 at 7–8.) Defendants attempt to steer the Court's attention away from the statements actually contained within Stewart's report, but an evaluation of those statements reveals that Stewart intends to opine as to the legality of the advertising

at issue in this case. For example, Stewart opines as to specific advertising claims that he concludes are "not unreasonable, and certainly not misleading." (Patton Aff.[1] Ex. 27 (Stewart Report at 16).) It is incomprehensible how Defendants can contend that this does not constitute an opinion as to the legality of the advertising. (*See* Dkt. 335 at 7 ("Dr. Sewart does not discuss . . . when an advertisement is . . . misleading").) Defendants' contention that Stewart does not refer to the Lanham Act and cites no case law (Dkt. 335 at 7–9) is irrelevant. The fact is that Stewart specifically makes the legal conclusion that the conduct is "not misleading."

Further, Defendants' characterizations of Stewart's comparative advertising opinions as merely those "concerning the general practice of 'comparative advertising'" or those constituting "background information" are incorrect. (*Id.* at 7, 8.) In paragraph 6 of Stewart's report, Stewart opines that the advertising statements at issue are lawful *because* they are comparative or are mere puffery in a comparative context. (Patton Aff. Ex. 27 (Stewart Report at 15).) This is improper. Similarly, Stewart opines that "[s]uch distribution does not constitute broad dissemination." (*Id.* at 8.) This is unquestionably an attempt to opine regarding the dissemination element of Select Comfort's Lanham Act claim, regardless of whether Stewart actually refers to the Lanham Act in his report.

A review of Stewart's report reveals multiple examples of Stewart providing explanations as to why he believes Defendants' advertising is lawful. These legal

---

[1] "Patton Aff." refers to Dkt. 303.

conclusions—that certain practices do not violate the Lanham Act—are reserved for the jury and thus must be excluded from Stewart's testimony at trial.

### B. Stewart's Ultimate Conclusions Regarding the Manual on Complex Litigation Should Be Excluded.

Defendants appear to misunderstand Select Comfort's motion with respect to Stewart's opinions related to the Manual on Complex Litigation ("Manual"), stating that Select Comfort "contends that Dr. Stewart should not be permitted to discuss the well-known survey research standards set forth in the Manual." (Dkt. 335 at 2; *see also* Dkt. 335 at 9–10.)  In fact, Select Comfort has *not* moved to exclude Stewart's general discussion of Poret's survey in the context of survey guidelines that are also reflected in the Manual.[2]  Instead, Select Comfort merely seeks to exclude Stewart's ultimate conclusions that Poret's survey "fails" to meet the Manual's requirements—a conclusion with which Stewart ends his discussion of each requirement. (*See* Patton Aff. Ex. 27 (Stewart Report at 21, 22, 23, 24, 26, 29, 30, 33).)[3]  Whether Poret's survey actually "fails" to satisfy the Manual's requirement is an issue reserved for the jury when it evaluates and weighs the evidence and conclusions contained within Poret's survey.

---

[2] Indeed, Defendants are correct that "Select Comfort does *not* seek to exclude the majority of Dr. Stewart's opinions critical of Mr. Poret's methodology." (Dkt. 335 at 4 (emphasis in original).) Select Comfort acknowledges that qualified experts are entitled to critique the methodology of other experts.  However, contrary to the implication in Defendants' brief, Select Comfort certainly does not agree with Stewart or concede that his critiques are correct.

[3] Defendants cited cases (Dkt. 335 at 9–10) are inapplicable because they do not involve conclusions as to a failure to meet the standards of the Manual.

(Dkt. 282 at 9–10.) Therefore, Stewart's opinions regarding Poret's alleged failure to satisfy the Manual should be excluded.

### C. Stewart's Speculative and Unsupported Conclusions Should Be Excluded.

Defendants assert that "Select Comfort's criticisms boil down to its disagreement with Dr. Stewart's consideration or interpretation of certain evidence, or its assertion that Dr. Stewart should have considered some other piece of evidence that Select Comfort thinks is more favorable to its case." (Dkt. 335 at 11.) Not so. Many of Stewart's opinions are speculative, lack a sufficient legal basis, and should be excluded regardless of Select Comfort's view of the evidence.

First, with respect to Stewart's opinions regarding evidence obtained through secret shoppers, Defendants distract the Court with references to footnotes in Stewart's report where he cites various deposition transcripts. But whether or not Stewart reviewed such testimony does not alter the fact that he fails to provide a sufficient basis for certain of his conclusions. For example, Stewart states that "testimony suggests the secret shopper interactions in this case are highly atypical and had the characteristics of an elaborate ruse designed to entrap retail sales personnel" (Patton Aff. Ex. 27 (Stewart Report at 12))—yet Stewart fails to identify to what testimony he refers. Even if Stewart had attempted to identify any testimony, it would be insufficient to support the conclusion. No one testified that secret shopper interactions are "highly atypical" or an "elaborate ruse" and, in fact, evidence demonstrates that secret shopper interactions were quite similar to interactions with actual customers. (*See* Patton Aff. Ex. 57 at Ans.

4

Interrog. 3 Attachment A (listing false statements Mattress Firm sales personnel made both to secret shoppers and to actual customers that are similar to one another).) This is not merely an issue of the sufficiency of the factual basis of Stewart's opinion, but is instead an issue of Stewart asserting speculative and unsupported opinions, which the law provides should be barred. (Dkt. 282 at 11.)[4]

Second, Stewart's opinions regarding retail salesperson incentives must be excluded. Although Defendants are correct that Stewart cites scholarly articles in certain footnotes of his report (Dkt. 335 at 15), Stewart makes no attempt to tie the findings in those articles to the facts of this case or his ultimate conclusions in this case. For example, pages earlier in his report, Stewart makes the broad conclusion that the "retail sales person would … have incentives to answer specific questions about such products in a generic way rather than give credence to a specific competitor." (Patton Aff. Ex. 27 (Stewart Report at 9).) But Stewart cites nothing to support that conclusion (*see id.*), and his opinion does not reflect the reality of the statements made by Mattress Firm salespersons to consumers (neither of whom did Stewart interview or survey). (Patton Aff. Ex. 57 at Ans. Interrog. 3 Attachment A ; Ex. 26 (Stewart Dep. 55:18–56:4, 117:25–118:3, 175:20–22).) Thus, Stewart cannot properly assert such a conclusion.

Third, as Select Comfort detailed in its opening brief, there are multiple reasons why Stewart's opinions regarding the impact of negative information available on the

---

[4] Defendants' cited case is inapplicable as it relates to a factual dispute regarding whether the defendant received notice of problems for which it negligently failed to warn consumers. *See Hammes v. Yamaha Motor Corp. U.S.A., Inc.*, No. 03-6456 (MJD/JSM), 2006 WL 1195907, at *6 (D. Minn. May 4, 2006).

5

internet is inadmissible—including because they constitute improper legal conclusions, inappropriate weighing of the evidence, and unsupported opinions. (Dkt. 282 at 15–17.) Defendants' attempt to characterize these opinions as mere criticisms of Poret's surveys (Dkt. 335 at 16) is unconvincing. Poret's name does not even appear in paragraph 5 of Stewart's report, nor is there any discussion of Poret's survey itself. (Patton Aff. Ex. 27 (Stewart Report at 12–15).)[5] Instead, paragraph 5 contains affirmative opinions regarding the availability of negative information, the credible perception of certain websites, the likelihood of a consumer to seek out online information, the influential nature of online information compared to retail salespersons' statements, and a consumer's negative response to disparaging comments. (*See id.*) These opinions must be prohibited at trial. (*See* Dkt. 282 at 15–17.)

Fourth, Stewart's point allocation hypothetical is an improper opinion and should be excluded. Stewart uses this hypothetical in an attempt to support his opinions that Poret "inflates the importance of relatively less important product information" and that "[n]o conclusion can be draw[n] from Mr. Poret's data on the importance of claims

---

[5] Defendants' attempt to construe Stewart's opinions as ones meant to demonstrate that Poret's survey respondents "may have been influenced" by "generally available information or preexisting beliefs" (Dkt. 335 at 17–18) is similarly unpersuasive. As explained in Select Comfort's briefs in opposition to Defendants' motions to exclude Poret's surveys, Poret did properly account for those factors through the use of controls in both of his surveys. (*See* Dkt. 334 at 12–14; Dkt. 331 at 13–15.) Defendants' own cited cases confirm this method. *Procter & Gamble Co. v. Ultreo, Inc.*, 574 F. Supp. 2d 339, 351 (S.D.N.Y. 2008) (noting that a control "would have allowed a researcher to distinguish between pre-existing consumer beliefs … and consumer beliefs that were the result of [defendants'] advertising"); *Am. Home Prods. Corp. v. The Procter & Gamble Co.*, 871 F. Supp. 739, 749 (D.N.J. 1994) (noting the importance of a control to account for preconceptions) (cited on p. 18 of Dkt. 335).

6

because the list of claims he uses does not include all of the factors that may influence consumer choice." (*See id.* at 25–26.)  But these opinions are legally irrelevant because the Lanham Act "does not require that the alleged falsehood be the only factor influencing consumer purchasing decisions—it merely 'considers whether the false or misleading statement is likely to make a difference to purchasers.'" *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 823 (D. Minn. 2011) (rejecting party's argument to exclude Poret's survey because he allegedly failed to account for other factors; finding reliable evidence that consumer decisions were materially affected by what was different between the test and control group, regardless of other factors). Because Stewart's hypothetical relates to an irrelevant criticism of Poret's survey and would only serve to confuse the jury into believing that Stewart's arbitrary list of factors with arbitrary assigned values have relevance to this case when they do not, Stewart's opinion on this issue is inadmissible.

Lastly, Stewart uses a subjective and unsupported mathematical equation in an attempt to demonstrate that Poret's survey "does not reflect market realities." (*See* Patton Aff. Ex. 27 (Stewart Report at 32).)  But Stewart misses the mark because his equation lacks sufficient basis, is speculative, and ignores the purpose of Poret's survey—to test materiality, not exposure rate or damages amounts. (*See* Dkt. 282 at 19–22.)  Further, Defendants misunderstand the crux of Select Comfort's motion.  Select Comfort does not dispute that the 22.5% materiality percentage yielded by Poret's survey "is only applicable to consumers who were 'exposed' to the claim." (Dkt. 335 at 22.)  This is not only evident, but is clearly stated in Select Comfort's opening brief.  (Dkt. 282 at 21.)

Defendants attempt to justify Stewart's mathematical equation as illustrative of exposure and real-world influence, yet Poret is not opining on those issues. Thus, Stewart's speculative and unsupported equation should be excluded.

## II.  SELECT COMFORT'S MOTION TO EXCLUDE STEWART'S REPORT IS PROCEDURALLY AND SUBSTANTIVELY PROPER.

Defendants incorrectly assert that Select Comfort's motion to exclude Stewart's report as improper rebuttal is procedurally and substantively improper. (Dkt. 335 at 24–25.)

First, Select Comfort's prior filings do procedurally bar this motion. In discussing Stewart's report, Judge Rau stated that "the level of analysis Select Comfort seeks is more properly within the discretion of Judge Frank" and ordered that "admissibility of the expert reports at trial is within the discretion of . . . the trial judge." (*See* Dkt. 249 at 3, 7.) Critically, Stewart testified that paragraphs 1–6 of Section A of his report were not drafted to rebut <u>any</u> of Select Comfort's experts (*see* Patton Aff. Ex. 26 (Stewart Dep. 31:10–34:13)) and paragraph 7 does not relate to the issues in Poret's report but instead relates to the factual basis for statements at issue in this litigation (*compare* Patton Aff. Ex. 27 (Stewart Report at 15–16) *with* Patton Aff. Ex. 23 (Poret Report at 5)). Thus, Stewart admittedly did not draft Section A of his report as rebuttal. This is further obvious in light of the stark contrast between Stewart's Section A and Stewart's Sections B and C, which clearly and directly critique Poret and Joachimsthaler, respectively. (*See* Patton Aff. Ex. 27 (Stewart Report at 16–35).)

Second, Select Comfort's motion is substantively proper. Section A of Stewart's expert report does not merely contain "broad concepts" constituting "background information" (Dkt. 335 at 24) but instead contains very specific affirmative opinions related to the advertising at issue in this case (Dkt. 282 at 26–28). Stewart confirmed this in his deposition. (*See* Patton Aff. Ex. 26 (Stewart Dep. 32:17-23).) Therefore, the opinions set forth in Section A of Stewart's report must be excluded as improper rebuttal.

## CONCLUSION

Based on all the foregoing reasons and those set forth in Select Comfort's Memorandum, Select Comfort respectfully requests that its motion be granted and that David Stewart be prohibited from offering (1) any legal conclusions, (2) any conclusion that Poret's survey "fails" to meet certain requirements in the Manual for Complex Litigation, and (3) any conclusions that are speculative and lack a sufficient legal basis. Select Comfort also requests that the Court exclude the entirety of Section A of Stewart's expert report as improper rebuttal.

Dated:  March 4, 2016 **FOX ROTHSCHILD LLP**

By: s/Dennis E. Hansen
Andrew S. Hansen   (#285894)
Samuel R. Hellfeld   (#390954)
Dennis E. Hansen   (#386734)
Aaron Mills Scott   (#33943X)
Elizabeth A. Patton   (#391431)

Campbell Mithun Tower -- Suite 2000
222 South Ninth Street
Minneapolis, Minnesota  55402

Telephone:   (612) 607-7000
Fax:   (612) 607-7100
E-Mail:   ahansen@foxrothschild.com
shellfeld@ foxrothschild.com
dhansen@ foxrothschild.com
ascott@ foxrothschild.com
epatton@ foxrothschild.com

**ATTORNEYS FOR PLAINTIFF
SELECT COMFORT CORPORATION**